McDonald v. Kelson.

LORENZO E. McDONALD *et al.* v. E. E. KELSON.

No. 15,708.    (98 Pac. 772.)

SYLLABUS BY THE COURT.

INJUNCTION—*Eviction of Purchaser at Tax Sale—Improvements.*
A tax-deed holder in possession was defeated in an action of ejectment and was given a lien for taxes. At the date of the judgment he did not live on the land, and had no claim for improvements. The landowner did not satisfy the judgment lien, and allowed the land to sell for taxes. The lien-holder purchased at the tax sale and was given a tax-sale certificate. Without force, fraud or collusion he then moved on the land, took full possession, and made lasting and valuable improvements. Subsequently the landowner redeemed from the judgment and tax sale, and caused a writ of possession to issue in the ejectment suit. *Held,* the occupant of the land is entitled to an injunction against eviction until his claim for improvements is adjudicated and satisfied.

Error from Ness district court; CHARLES E. LOBDELL, judge. Opinion filed December 12, 1908. Affirmed.

*John F. Wood,* for plaintiffs in error.

*A. S. Foulks,* and *A. W. Wilson,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: In an action of ejectment brought by Lorenzo E. McDonald against E. E. Kelson to recover the land in controversy a tax deed under which Kelson

claimed was set aside, and he was given a lien for taxes. The judgment to this effect was rendered in February, 1903. At that time Kelson was not living on the land and made no claim for improvements. McDonald did not discharge the judgment lien for taxes, and allowed the land to sell at tax sale in September, 1904, for the taxes of 1903. Kelson purchased at this sale and was given a treasurer's certificate of sale. He then moved on the land, made it his home, erected a dwelling-house and other buildings, made other lasting and valuable improvements, and has resided there ever since. He paid the taxes for 1904 and 1905. In October, 1906, McDonald redeemed the land from the judgment and tax sale, and caused a writ of possession to be issued in the ejectment case. Kelson then brought suit for an injunction to prevent eviction until his claim for improvements is adjudicated and satisfied. The probate judge granted a restraining order, which the district court, after hearing a motion to dissolve, continued in force, and a demurrer to the petition was overruled. McDonald prosecutes error upon these rulings.

The petition is criticised for indefiniteness in certain particulars, but indefiniteness is not ground for demurrer if a cause of action be made to appear. Properly interpreted, the petition shows that the plaintiff, having the right of possession and possession in law under the judgment in the ejectment suit, rested upon his legal rights until he purchased the land at tax sale; but that when he obtained his tax-sale certificate he entered for the first time into full actual physical occupancy of the land; and that, in the situation he then occupied, he made the improvements for which he claims protection. Plainly his possession could not, in any view, be wrongful as against the defendant when the improvements were made, and the legal question presented is whether the holder of a tax-sale certificate, in quiet and rightful possession, acquired and held un-

McDonald v. Kelson.

der the circumstances stated, can be evicted under a judgment in ejectment rendered before the tax-sale certificate was issued without receiving pay for lasting and valuable improvements made while holding possession under the certificate.

The plaintiff was under no obligation to pay taxes because he remained in possession to secure the satisfaction of his judgment lien for taxes. The right to keep possession until reimbursed for such an outlay is burdened with no duty to expend more money to keep the land clear of new tax liens accruing from the landowner's subsequent defaults. Therefore the plaintiff could rightfully purchase at the tax sale.

The occupying claimant's act is clear and positive that no one in possession of lands held under a sale for taxes shall be evicted or thrown out of possession by any one holding a better title until he has been paid the full value of all lasting and valuable improvements made under such holding, and a person in possession holding a certificate of sale issued by the county treasurer upon a sale for taxes shall be considered as having sufficient title to demand the value of such improvements. (Civ. Code, §§ 601, 602.) In the early case of *Stebbins v. Guthrie*, 4 Kan. 353 (1868), these sections were construed as follows:

"One of the conditions pointed out in the first section is: being in possession of, and holding any land under any sale for taxes authorized by the laws of the state, entitle the occupant to the benefit of the provisions of the statute, if his possession has been obtained without fraud or collusion.

"It will be seen that in this section it is only made necessary that the occupant holds under any sale for taxes; but lest it should be contended, as it was in this case, that no sale was perfected until the deed was made, thus leaving property unimproved and unproductive for two years, it is further provided in section two, which is a legislative construction of section one, that if the claimant holds a certificate of sale of the lands from a collector of taxes, or county treasurer, &c., he shall be deemed to have sufficient title to said

land to demand the value of improvements made under provisions of the first section.

"Now, the plaintiffs in error had such certificate at the time they made the improvements for which they demand compensation, and that, by the obvious terms of the law, entitled them to its benefits." (Page 365.)

In another part of this opinion expressions were used indicating that a purchaser at a tax sale becomes the actual owner of the land sold when he receives a tax-sale certificate. This misapprehension of the effect of a sale for taxes before a tax deed issues was corrected in *Douglass, Guardian, v. Dickson,* 31 Kan. 310, 315, 1 Pac. 541, but the language quoted above has been recognized as a correct statement of the law in numerous subsequent cases dealing with the question.

When a tax sale occurs the land itself is offered for sale, is bid for, and is sold. The certificate issued describes the land purchased, states the amount paid therefor, and the time when the purchaser will be entitled to a deed. This certificate may be assigned, and an assignment has the same force as an assignment of a bond for a conveyance. The certificate may be acknowledged by the treasurer, and if acknowledged it may be recorded as an instrument affecting title. (Gen. Stat. 1901, §§ 7641, 7643, 7648.) The purchaser acquires more than a mere lien for the purchase-money. He acquires a kind of title. (*Coonradt v. Myers,* 31 Kan. 30, 2 Pac. 858.) This title is too inchoate and incomplete to constitute the purchaser an owner. It will not support ejectment, and it is not strong enough to authorize an entry upon land in the actual possession of the owner. But if the owner has no other possession than that which the law annexes as an incident to his ownership, and the holder of the tax-sale certificate can take full possession in fact without force and without fraud or collusion with any one, he may do so. Should he do so, his possession is rightful to the extent that he may not be evicted until he is paid for his improvements. (See *Stebbins v. Guthrie,* 4 Kan. 353;

McDonald v. Kelson.

*Millbank v. Ostertag,* 24 Kan. 462; *Coonradt v. Myers,* 31 Kan. 30, 2 Pac. 858.)

Of course, the adverse judgment in the ejectment action is binding upon the plaintiff and concludes him in respect to the title and possession ineffectually defended in that action; but under many circumstances there may be a title and possession entirely distinct and wholly disconnected from that involved in the ejectment action, so that there is in fact no privity between the holder and the defeated ejectment defendant. In such cases the judgment extends no further than the title and possession which the parties were able to litigate; and if a person claiming separate, paramount and undetermined rights enter pending the ejectment action a writ of possession may not be executed against him. (*Harrod v. Burke,* 76 Kan. 909, 92 Pac. 1128, and authorities there cited; *Smith v. Pretty,* 22 Wis. 655; *Howard and Holman v. Kennedy's Ex'rs,* 4 Ala. 592, 39 Am. Dec. 307; *Clark v. Parkinson & another,* 92 Mass. 133, 136, 87 Am. Dec. 628; *Irving v. Cunningham,* 77 Cal. 52, 18 Pac. 878; *Atkison v. Dixon,* 89 Mo. 464, 1 S. W. 13; *Strabala v. Lewis,* 80 Iowa, 510, 45 N. W. 871; Warvelle, Eject. § 511.)

In *Irving v. Cunningham, supra,* the execution of a writ of possession against a stranger to the suit entering under a tax deed was enjoined. The plaintiff claims just such a new, independent and paramount right. If the defendant's default had continued long enough to allow the tax proceeding to ripen into a valid tax deed all his rights would have been extinguished. When a landowner fails to discharge his duty to the state he exposes himself to the penalty inflicted by the tax laws, which is the annihilation of his entire estate and the vesting of it in the tax purchaser. A tax sale will cut across titles and rights of possession established by judgment in ejectment as well as other kinds, and it makes no difference that the tax purchaser is also the defendant in ejectment, so long as he rests under no

disability to take a tax deed. The occupying claimant's act is just as rigorous, but not so far-reaching. The holder of a tax-sale certificate, enjoying a possession which is not wrongful in any respect can not be evicted until he is paid for his improvements.

The occupying claimaint's act is based in part upon a wise public policy which encourages the improvement of real estate. The interests of the state as a ·corporation needing revenue are advantaged, and the general welfare of the people is enhanced and promoted. In this case the plaintiff had no semblance of title after the judgment in ejectment, but only barren possession until his lien should be discharged. He could not improve the land except at the risk of loss, and if the defendant chose not to redeem it must have remained unimproved, at least until the full period of redemption expired and a tax deed issued. Another consideration underlying the act is the inequity and injustice of forfeiting improvements made under a title which the law recognizes. In order to accomplish the purpose of the act and to carry out the spirit in which it is framed it must be liberally construed, and the conclusion must be that the facts stated in the petition entitle the plaintiff to an injunction notwithstanding the judgment in the ejectment action.

The judgment of the district court is affirmed.